UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
JUN - 3 2016
CLERK, US DISTRICT COURT
NORFOLK, VA

GLEN E. CROWDER, Individually and as )
Administrator of the )
ESTATE OF BOBBIE L. CROWDER, )
Deceased, )
 )
 )
    Plaintiff, )
 )
v. )   Civil Action No. 2:16cv263
 )
UNITED STATES OF AMERICA, )
 )
    Defendant. )

## COMPLAINT

GLEN E. CROWDER, Individually and as Administrator of the ESTATE OF BOBBIE L. CROWDER, deceased, by counsel, states as follows for his Complaint against the Defendant, United States of America:

### Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. In compliance with 28 U.S.C. § 2675, Glen E. Crowder ("Mr. Crowder") filed a notice of administrative claim with the Office of the Judge Advocate General, which is attached as Exhibit A. That claim was received by the Office of the Judge Advocate General on November 30, 2015.

3. The Office of the Judge Advocate General did not make a final disposition of the claim within six months of filing.

4. Accordingly, Mr. Crowder's claim is ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the cause of action arose within the Eastern District of Virginia, Norfolk Division, at the Naval Medical Center Portsmouth ("NMCP") in Portsmouth, Virginia.

6. At all times relevant to this action, Mr. Crowder and his now deceased wife, Bobbie Lee Crowder ("Mrs. Crowder"), were legally married and resided in Chesapeake, Virginia.

7. Plaintiff, Mr. Crowder, is an adult resident of the Commonwealth of Virginia who qualified as Administrator of the Estate of Bobbie Lee Crowder, deceased, in the Office of the Clerk of the Chesapeake Circuit Court on October 16, 2015. That qualification is attached hereto as Exhibit B.

8. At all times relevant to this action, the United States owned and operated the NMCP.

9. At all times relevant to this action, the agents, servants, employees and personnel of the United States were acting within the course and scope of their employment in providing medical care and treatment to Mr. Crowder's late wife, Mrs. Crowder. Mr. Crowder was a veteran of the United States Navy, and thus his wife, Mrs. Crowder, was entitled to such care and treatment at the NMCP and its affiliated outpatient care centers.

10. The medical care described as follows was provided to Mrs. Crowder at the NMCP and/or its affiliated clinics unless otherwise stated.

### Allegations

11. Mr. Crowder restates and re-alleges paragraphs 1 through 10 as if fully stated herein.

12. Mrs. Crowder was the 57 year-old wife of a Navy veteran who died on November 21, 2014 from metastatic breast cancer, which her healthcare providers at the NMCP negligently failed to diagnose and treat in a timely manner.

13. In the spring of 2012, Mrs. Crowder was discovered to have stomach cancer, which was surgically resected without complication at the NMCP.

14. Following her surgery for stomach cancer in 2012, Mrs. Crowder was under the direct care of Timothy McCullough, M.D. ("Dr. McCullough") and she was scheduled for intermittent MRI imaging to monitor for recurrence or metastasis of her stomach cancer.

15. On September 17, 2012, Mrs. Crowder had a surveillance MRI performed at the NMCP, which was interpreted by Sean Tyszko, M.D. ("Dr. Tyszko").

16. Dr. Tyszko reported that no malignancy or metastatic disease was identified on Mrs. Crowder's September 17, 2012 MRI.

17. On March 21, 2013, Mrs. Crowder had a surveillance MRI of the abdomen and pelvis performed at the NMCP, which was also interpreted by Dr. Tyszko.

18. Dr. Tyszko reported that no malignancy or metastatic disease was identified on Mrs. Crowder's March 21, 2013 MRI.

19. Contrary to Dr. Tyszko's report, Mrs. Crowder's March 21, 2013 MRI showed the presence of a suspicious mass in the right breast. This finding should have been included in Dr. Tyszko's report of Mrs. Crowder's March 21, 2013 MRI, and a recommendation should have been made for further evaluation of Mrs. Crowder's right breast.

20. On June 14, 2013, Mrs. Crowder underwent a bilateral mammogram at the NMCP. The mammogram was interpreted by Joel Metzger, M.D. ("Dr. Metzger"), and Lawrence Leclair, M.D. ("Dr. Leclair").

21. Dr. Metzger and Dr. Leclair reported that Mrs. Crowder's breast tissue was essentially "fatty replaced." Dr. Metzger and Dr. Leclair reported that there were no masses, suspicious calcifications, regions of architectural distortion, or secondary signs of malignancy seen on Mrs. Crowder's June 14, 2013 mammogram.

22. Contrary to the report authored by Dr. Metzger and Dr. Leclair, a large spiculated mass in Mrs. Crowder's right breast highly suspicious for a malignant tumor was actually present on her June 14, 2013 mammogram.

23. The large spiculated mass in Mrs. Crowder's right breast as seen on the June 14, 2013 mammogram was not reported by the NMCP radiologists.

24. The large spiculated mass in Mrs. Crowder's right breast as seen on the June 14, 2013 mammogram required further medical work-up.

25. The tumor visualized on the June 14, 2013 mammogram is the same mass that was visible on the March 21, 2013 MRI.

26. On March 21, 2014, Mrs. Crowder received a surveillance MRI of the abdomen performed at the NMCP, which was interpreted by Elizabeth Hosselkus, M.D. ("Dr. Hosselkus"), and Eric Sturgill, M.D. ("Dr. Sturgill").

27. Dr. Hosselkus and Dr. Sturgill reported no evidence of residual or recurrent malignancy or metastatic disease on Mrs. Crowder's March 21, 2014 MRI. Specifically, no enhancing hepatic masses were seen on the March 21, 2014 MRI per the providers' report.

28. Again, however, a suspicious mass in the right breast was present on Mrs. Crowder's March 21, 2014 MRI, and this mass was even more prominent than it was on Mrs. Crowder's March 21, 2013 MRI.

4

29. The suspicious mass in Mrs. Crowder's right breast as seen on the March 21, 2014 MRI was not reported by the NMCP radiologists.

30. The suspicious mass in Mrs. Crowder's right breast as seen on the March 21, 2014 MRI required further medical work-up.

31. The providers at the NMCP failed to report findings suspicious for tumor with regard to Mrs. Crowder's March 21, 2013 MRI, her June 14, 2013 mammogram, and her March 21, 2014 MRI.

32. On October 1, 2014, Mrs. Crowder had another regularly scheduled surveillance MRI of the abdomen and pelvis performed at the NMCP.

33. Mrs. Crowder's October 1, 2014 MRI, interpreted by Leah Sag, M.D. ("Dr. Sag"), and Dr. Sturgill revealed a spiculated mass like region within Mrs. Crowder's right breast parenchyma. The breast mass demonstrated enhancement and measured 1.3 x 1.7 x 2.4 cm as reported by the providers. Further, the MRI showed masses had developed in Mrs. Crowder's liver, lung, and in the area of her lumbar vertebra. The liver, lung, and vertebral masses were not present on any of the prior imaging studies and thus represented an interval development.

34. Dr. Sag and Dr. Sturgill reported that the breast mass seen on Mrs. Crowder's October 1, 2014 MRI was "<u>more conspicuous</u>" on this study than when compared to the prior study, acknowledging that this mass was in fact visible on previous MRIs, despite the fact that it was not contemporaneously noted or described in any of those corresponding reports. (Emphasis added.)

35. Mrs. Crowder was ultimately diagnosed with breast cancer following the October 1, 2014 MRI.

36. Mrs. Crowder then underwent a bilateral diagnostic mammogram and right breast ultrasound on October 8, 2014 at the NMCP.

37. Mrs. Crowder's October 8, 2014 diagnostic mammogram and right breast ultrasound confirmed the presence of a large mass in Mrs. Crowder's right breast and lymph nodes suspicious for malignancy. The BI-RADS Category was rated as "5," meaning it was highly suggestive of malignancy and appropriate action should be taken.

38. A biopsy performed on October 8, 2014 at the NMCP revealed an invasive ductal carcinoma of the right breast and metastatic invasive ductal carcinoma in a right axillary lymph node.

39. On October 14, 2014, Dr. McCullough saw Mrs. Crowder as a part of a breast diagnostic visit at the NMCP.

40. The breast examination on October 14, 2014 was the first breast examination that Dr. McCullough performed on Mrs. Crowder, despite her having been under his direct care for years due to the stomach cancer.

41. On October 14, 2014, Dr. McCullough noted, "On the recent MRI, [Mrs. Crowder] was noticed to have an enlarging infiltrating spiculated mass lesion in the lower outer aspect of her right breast, <u>previously noted approximately 18 months ago</u> on similar MRI of the abdomen, but not well defined, clearly now enlarging and much more characteristic of a breast carcinoma." (Emphasis added.)

42. Dr. McCullough's comments again acknowledge that the breast mass was in fact visible on the earlier MRI performed on March 21, 2013 that was interpreted by Dr. Tyszko. Again, the report from that March 2013 study made no mention whatsoever of such a mass.

43. Through further diagnostic evaluation, Mrs. Crowder was found to have metastatic disease in her lung and pleura, her liver and portal vein, her sternum, and her left femur.

44. During an oncology consultation with Aaron Flanders, M.D. ("Dr. Flanders") on October 31, 2014 at the NMCP, Mrs. Crowder reported "10/10" pain in her sternum and left hip, and the pain was so severe that she was using a wheelchair. Dr. Flanders recommended radiation and chemotherapy for Mrs. Crowder.

45. After being admitted to the NMCP on October 31, 2014, Mrs. Crowder began to undergo treatment for her metastatic breast cancer, but her medical condition continued to decline.

46. Shortly before the Thanksgiving holiday, on November 21, 2014, Mrs. Crowder passed away in the hospital surrounded by her family. She was 57 years old.

47. The failure of the NMCP to appropriately report abnormal findings on Mrs. Crowder's March 21, 2013 MRI, her June 14, 2013 mammogram, and her March 21, 2014 MRI resulted in a significant delay in diagnosing Mrs. Crowder's breast cancer.

48. The repeated failures to report the presence of a suspicious mass on imaging and recommend further medical work-up were breaches of the standard of care that resulted in a significant and fatal delay in diagnosing Mrs. Crowder's breast cancer.

## Negligence

49. Mr. Crowder restates and re-alleges paragraphs 1 through 48 as if fully stated herein.

50. As a provider of medical services to Mrs. Crowder, the United States and its agents, servants or employees at NMCP and its affiliates, including but not limited to Dr.

Tyszko, Dr. Hosselkus, Dr. Sturgill, Dr. Metzger, Dr. Leclair, Dr. Sag, Dr. McCullough, and Dr. Flanders, owed Mrs. Crowder a duty to provide her medical care consistent with the governing standard of medical care.

51. Mr. Crowder alleges that the agents, servants, or employees of the United States at the NMCP and its affiliates, including but not limited to Dr. Tyszko, Dr. Hosselkus, Dr. Sturgill, Dr. Metzger, Dr. Leclair, Dr. Sag, Dr. McCullough, and Dr. Flanders, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

    a. Negligent delay in diagnosis of Mrs. Crowder's breast cancer;

    b. Negligent failure to appropriately interpret and/or report imaging studies performed during the time period of September 1, 2012 through October 1, 2014;

    c. Negligent delay in the treatment of Mrs. Crowder's metastatic breast cancer; and

    d. Any and all other deviations from the standard of care which will be developed through further investigation, discovery and expert review.

### Count I – Wrongful Death

52. Mr. Crowder restates and re-alleges paragraphs 1 through 51 as if fully stated herein.

53. As a direct and proximate result of the aforementioned negligence of the agents, servants, or employees of the United States, including but not limited to Dr. Tyszko, Dr. Hosselkus, Dr. Sturgill, Dr. Metzger, Dr. Leclair, Dr. Sag, Dr. McCullough, and Dr. Flanders, Mrs. Crowder died on November 21, 2014.

54. Had Mrs. Crowder been appropriately diagnosed and treated for her breast cancer, she would have likely been cured. The negligent failure to diagnose and treat Mrs. Crowder's breast cancer in a timely and appropriate manner substantially shortened her life.

55. Accordingly, Mr. Crowder claims the following damages:

    a. Sorrow, mental anguish, and loss of solace, companionship, comfort, guidance, kindly offices, consortium, and the advice of Mrs. Crowder;

    b. Compensation for the reasonably expected loss of income and financial support of Mrs. Crowder and the loss of services, protection, care, and assistance provided by her;

    c. Expenses for the care, treatment, and hospitalization of Mrs. Crowder;

    d. Reasonable funeral and burial expenses; and

    e. Compensation for any other damages sustained as a proximate result of the Defendant's negligence.

56. For these damages, Mr. Crowder demands monetary relief in an amount deemed appropriate and just by the Court.

## Count II – Survival

57. Mr. Crowder restates and re-alleges paragraphs 1 through 56 as if fully stated herein.

58. As a direct and proximate result of the aforementioned negligence of agents, servants, and employees of the United States, including but not limited to Dr. Tyszko, Dr. Hosselkus, Dr. Sturgill, Dr. Metzger, Dr. Leclair, Dr. Sag, Dr. McCullough, and Dr. Flanders, Mrs. Crowder was caused to suffer physical injury, pain, mental anguish, physical disability, and related damages.

59. Accordingly, Mr. Crowder claims the following damages:

    a. Compensation for the mental and physical pain, suffering, inconvenience, mental anguish, and loss of life's pleasures of Mrs. Crowder prior to her death;

    b. Expenses for care, treatment, and hospitalization;

    c. Loss of past and future earnings and earning capacity of Mrs. Crowder; and

    d. Compensation for any other damages sustained as a proximate result of the Defendant's negligence.

WHEREFORE, Mr. Crowder respectfully requests that the Court grant judgment in his favor against the Defendant as prayed for above in the amount of Two Million, Five Hundred Thousand Dollars ($2,500,000.00), together with prejudgment interest and any other costs as he may be lawfully entitled to recover.

Respectfully submitted,

GLEN E. CROWDER, Individually and as Administrator of the
ESTATE OF BOBBIE L. CROWDER

_____
Brewster S. Rawls
VA State Bar #23604
Glen H. Sturtevant, Jr.
VA State Bar #73458
RAWLS McNELIS + MITCHELL, PC
211 Rocketts Way, Suite 100
Richmond, VA 23231
Telephone: (804) 344-0038
Facsimile: (804) 782-0133
brawls@rawlsmcnelis.com
gsturtevant@rawlsmcnelis.com